**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Case No.: _____**

| | |
|---|---|
| Morrie Wilf,<br><br>    Plaintiff,<br><br>vs.<br><br>Affiliate Asset Solutions, LLC,<br><br>    Defendants. | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

1. Plaintiff Morrie Wilf alleges violations of the Fair Debt Collection Practices Act ("FDCPA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C § 1692k and 28 U.S.C. § 1331. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because Plaintiff Morrie Wilf resides in this Judicial District; the events giving rise to the cause of action occurred in this Judicial District; and Defendant transacts business in this Judicial District.

## PARTIES

3. Plaintiff Morrie Wilf (hereinafter "Plaintiff") is a natural person, and citizen of the State of Minnesota, residing in Hennepin County.

4. Defendant Affiliate Asset Solutions, LLC (hereinafter "Affiliate") is a Delaware limited liability company with its principal place of business located at 145

Technology Parkway, Suite 100, Peachtree Corners, GA 30092. Affiliate is registered to do business in Minnesota. CT Corporation System, Inc. is the registered agent for Affiliate and authorized to accept service on behalf of Affiliate at 1010 Dale Street North, St. Paul, MN 55117.

## FACTUAL ALLEGATIONS

**THE CONSUMER DEBT**

5.   In 2015, Plaintiff obtained health care services from Tempe Emergency Physicians, LLC (hereinafter "TEP").

6.   Affiliate alleges that Plaintiff owes an outstanding balance in connection with the TEP account (hereinafter "TEP debt").

7.   The services provided by TEP were for Plaintiff's personal, family, and household purposes – specifically, for Plaintiff's health care or medical needs.

8.   Eventually the TEP debt was assigned, transferred, and/or sold to Pendrick Capital Partners, LLC ("Pendrick").

9.   Thereafter, Pendrick placed, assigned, or transferred the TEP debt to Affiliate.

10.   Affiliate was hired or retained for the purposes of collecting the unpaid balance on the TEP debt.

11.   The TEP debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

12.   Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

**AFFILIATE IS A DEBT COLLECTOR**

13.     According to the Nationwide Multistate Licensing System ("NMLS"), Affiliate holds active debt collection licenses in several states – NMLS ID number, 1391299.

14.     Affiliate holds an active "Collection Agency" with the Minnesota Department of Commerce – License Number 40474435.

15.     Affiliate is a member of ACA International The Association of Credit and Collection Professionals ("ACA") – the leading trade association the credit and collection industry.  *See Member Directory*, (Jun. 27, 2019, 2:43 p.m.), https://www.acainternational.org/search#memberdirectory.

16.     According to ACA International, Affiliate is in the business of third party collections.  *See id.*

17.     Affiliate regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.  *See Home Page*, https://affiliateas.com/ (Jun. 26, 2019, 12:18 p.m.); *About Affiliate*, https://affiliateas.com/page/8 (Jun. 27, 2019, 2:56 p.m.); *Careers*, https://affiliateas.com/page/6 (Jun. 27, 2019, 2:57 p.m.).

18.     Affiliate is engaged in a business, the principal purpose of which is the collection of debts.  *See id.*

19.     The debts that Affiliate collects are debts incurred for personal, family, or household purposes.

20.     Affiliate represents to third parties that it is a debt collection agency and

that it attempts to collect debts.

21. Affiliate specializes in collecting healthcare debt for third parties.

22. Affiliate refers to its collectors as patient care representatives.

23. Affiliate's patient care representatives' primary function is to communicate by phone or by internet chat with consumers to assist the consumer in resolving the outstanding debt.

24. Federal court records indicate that Affiliate has been sued multiple times in United States District Courts across the country for violations of the FDCPA. *See PACER Case Locator* (Mar. 14, 2019 11:22 a.m.), https://pcl.uscourts.gov/search (search term "*Affiliate Asset Solution*").

25. Affiliate regularly uses the mail and telephone to collect debts by sending debt collection letters to consumers, placing debt collection telephone calls to consumers; and by taking payments from consumers via check and credit card by telephone, mail, and the internet.

26. Affiliate is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

27. Affiliate was acting as debt collector with respect to the collection of the TEP debt.

**AFFILIATE VIOLATES THE FDCPA**

28. On or around January 1, 2018, Affiliate sent Plaintiff a debt collection letter in connection with the collection of the TEP debt.

29. The January 2018 debt collection letter informed Plaintiff that: (a) Affiliate was a debt collector; (b) Affiliate was attempting to collect the TEP debt on behalf of Pendrick or TEP, or both Pendrick and TEP; (c) the TEP account was placed with Affiliate for collection; and (d) the balance due on the TEP account was $1,185.00.

30. The January 2018 debt collection letter was a "communication" as defined by 15 U.S.C. § 1692a(2).

31. On January 9, 2018, Plaintiff, through his attorney at the time, Segal Defense P.A., sent written correspondence to Affiliate explicitly disputing the validity of the TEP debt.

32. Plaintiff's January 9, 2018 dispute letter, stated amongst other things that:

   a. Segal Defense is representing Plaintiff in connection with the TEP debt;

   b. Plaintiff disputed the TEP debt and disputed owing any money in connection with the TEP account;

   c. Affiliate was to cease further communications with Plaintiff; and that

   d. The TEP debt had been paid in full since January 2017.

33. Plaintiff's January 9, 2018 dispute letter requested verification of the TEP debt pursuant to 15 U.S.C. § 1692g.

34. In addition, Plaintiff, through Segal Defense P.A., sent documentation to Affiliate proving that the TEP debt had been paid in full.

35. Affiliate never sent Plaintiff or his attorneys verification of the TEP debt.

36. On or around February 27, 2019, Affiliate sent Plaintiff a debt collection letter in connection with the collection of the TEP debt.

37. The February 2019 debt collection letter informed Plaintiff that: (a) Affiliate was a debt collector; (b) Affiliate was attempting to collect the TEP debt on behalf of Pendrick or TEP, or both Pendrick and TEP; (c) the TEP account was placed with Affiliate for collection; (d) the balance due on the TEP account was $1,185.00; and that (e) Plaintiff could resolve the TEP debt by making a one time payment of $592.50.

38. In addition, the February 2019 debt collection informed Plaintiff that Affiliate may contact another person to confirm Plaintiff's location or to enforce a judgment.

39. On February 27, 2019, Affiliate knew that Plaintiff was represented by an attorney with respect to the TEP debt.

40. On February 27, 2019, Affiliate had knowledge of or could have readily ascertained Plaintiff's attorney's name, address, phone number, and all other contact information.

41. Plaintiff was confused, anxious, and angry because Affiliate was continuing to collect the TEP debt from Plaintiff even though Affiliate: (a) had not provided him with verification of the TEP debt; (b) was not supposed to contact Plaintiff; (c) was supposed to contact Plaintiff's attorney; and (d) was provided with evidence proving the TEP debt had been paid in full.

42. Under 15 U.S.C. § 1692g, upon receipt of Plaintiff's written dispute, Affiliate was required to cease all further debt collection activity prior to obtaining

verification of the TEP debt and subsequently sending verification of the TEP debt to Plaintiff.

43.     Affiliate failed or refused to send Plaintiff or his attorneys verification of the TEP debt and continued to collect the TEP debt in violation of 15 U.S.C. § 1692g.

44.     Affiliate's collection efforts overshadowed and were inconsistent with Plaintiff's rights under 15 U.S.C. § 1692g.

45.     The February 2019 debt collection letter was false, deceptive, misleading, unfair, and unconscionable because:

   a. Plaintiff does not owe $1,185 to Affiliate, Pendrick, TEP, or any other entity in connection with the TEP debt;

   b. Plaintiff has never owed $1,185 to Affiliate, Pendrick, TEP, or any other entity in connection with the TEP debt;

   c. Affiliate was not allowed to contact Plaintiff;

   d. Affiliate was only allowed to contact Plaintiff's attorneys;

   e. Affiliate was aware of Plaintiff's location;

   f. Affiliate was aware of Plaintiff's attorney's contact information and location;

   g. There was no lawsuit against Plaintiff in connection with the TEP debt;

   h. There was no judgment against Plaintiff in connection with the TEP debt; and

   i. Affiliate did not have the ability to pursue civil action against Plaintiff.

46.     Affiliate made material misrepresentations to Plaintiff concerning the TEP debt because overstating the amount of the debt and collecting an amount not owed are

material violations of the FDCPA.

47. Affiliate materially violated the FDCPA by falsely representing that it could contact third parties, that it could enforce a judgment, and that it could contact Plaintiff.

48. Specifically such conduct would induce Plaintiff to pay the TEP debt, where Plaintiff would otherwise not do so. Likewise, such conduct would to induce Plaintiff to communicate with Affiliate, where Plaintiff would otherwise not do so.

**PLAINTIFF'S DAMAGES, HARM, AND INJURIES**

49. Plaintiff was misled, deceived, duped, and confused as to Affiliate's ability to collect the TEP debt, Affiliate's ability to contact Plaintiff, the amount and balance of the TEP debt, and Affiliate's efforts to collect and amount that was not owed.

50. Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Affiliate's unlawful and wrongful collection efforts. Specifically:

   a. Plaintiff was upset, distressed, angry, aggravated, annoyed, agitated, nervous, anxious, confused, and duped;

   b. Plaintiff had to waste time by engaging in: (i) needless review and analysis of his financial accounts, the TEP debt, his credit reports, and Affiliate's collection procedures; (ii) multiple phone calls and correspondence with Affiliate, the creditor, his insurer, and with multiple attorneys;

   c. Affiliate created confusion, stress, anxiety, and uncertainty regarding Plaintiff's financial security, credit's report, credit rating, and credit score; and

   d. Affiliate created the real risk of Plaintiff paying more than what Affiliate was legally entitled to collect and paying Affiliate when no payment obligation existed.

51. All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### COMMUNICATION IN CONNECTION WITH DEBT COLLECTION

52. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

53. Affiliate communicated with Plaintiff in connection with the collection of the TEP debt when Affiliate knew that Plaintiff was represented by an attorney with respect to the TEP debt.

54. Affiliate communicated with Plaintiff in connection with the collection of the TEP debt after Plaintiff notified Affiliate in writing that Plaintiff refused to pay the TEP debt, that he did not owe the TEP debt, and that Plaintiff requested Affiliate to cease any further communication with Plaintiff.

55. Affiliate's conduct violated 15 U.S.C. §§ 1692c(a)(3) and 1692c(c).

56. As a result of Affiliate's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)-(3).

# COUNT II
# VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
# FALSE OR MISLEADING REPRESENTATIONS

57. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

58. Affiliate used false, deceptive and/or misleading means in connection with the collection of the TEP debt by:

   a. Falsely representing the character, amount, and legal status of the TEP debt;

   b. Representing or implying that nonpayment of the TEP debt will result in the garnishment or levy of Plaintiff's wages or funds when so such action was lawful and when Affiliate did not intend to take such action;

   c. Threatening to take action that cannot legally be taken and that was not intended to by taken;

   d. Deceptive, false, and misleading representations to Plaintiff regarding Affiliate's ability to collect the TEP debt, the amount and balance of the TEP debt, Affiliate's ability to contact Plaintiff, and Affiliates ability to contact third parties; and

   e. Deceptive, false, and misleading representations to Plaintiff regarding a judgment, a civil action, and a lawsuit.

59. Affiliate's conduct violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4), 1692e(5), and 1692e(10).

60. As a result of Affiliate's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)-(3).

## COUNT III
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## UNFAIR PRACTICES

61.  Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

62.  Affiliate used unfair or unconscionable means to collect or attempt to collect the TEP debt by collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the TEP Debt and that was not permitted by law.

63.  Defendants' conduct violated 15 U.S.C. §§ 1692f and 1692f(1).

64.  As a result of Affiliate's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(1)-(3).

## COUNT IV
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## VALIDATION OF DEBT

65.  Plaintiff restates and re-alleges the preceding allegations of this Complaint.

66.  In January 2018, Plaintiff sent Affiliate written notice disputing the validity of the TEP debt and requesting verification of the TEP debt.

67.  Affiliate never sent Plaintiff or his attorneys verification of the TEP debt.

68.  Despite its failure to send Plaintiff or his attorneys verification of the TEP debt, Affiliate continued to communicate with Plaintiff and collect the TEP debt on several occasions.

69.  Affiliate's collection activities overshadowed and were inconsistent with

Plaintiff's right to dispute the TEP debt and/or to seek validation of the TEP debt.

70. Affiliate's conduct violated 15 U.S.C. §§ 1692g(a) and 1692g(b).

## JURY DEMAND

71. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff Morrie Wilf demands a trial by jury and prays for judgment against Defendant Affiliate Asset Solutions, LLC as follows:

1. Awarding judgment against Affiliate in an amount to be determined at trial;

2. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Affiliate;

3. Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

4. Awarding Plaintiff such other and further relief as the Court deems proper, just and equitable.

**TARSHISH CODY, PLC**

Dated:  July 25, 2019

By:   s/ Adam R. Strauss
Adam R. Strauss (#0390942)
ars@attorneysinmn.com
Benjamin W. Tarshish (#0392691)
btarshish@attorneysinmn.com
6337 Penn Avenue South
Minneapolis, Minnesota 55423
Telephone: (952) 361-5556
Facsimile: (952) 361-5559
**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Morrie Wilf verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON** _July_ , _2_ , _2019_
                          Month           Day         Year

_/s/ Morrie Wilf_
Morrie Wilf